FILED
2020 Sep-21 PM 02:07
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| RANDY DALE WHITMORE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 4:19-cv-01149-LSC |
| ) | |
| ANDREW SAUL, ) | |
| Commissioner of ) | |
| Social Security, ) | |
| ) | |
| Defendants ) | |

**MEMORANDUM OF OPINION**

**I.     Introduction**

The Plaintiff, Randy Dale Whitmore ("Whitmore"), appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his applications for a period of disability and Disability Insurance Benefits ("DIB"). Whitmore timely pursued and exhausted his administrative remedies, and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Whitmore was 49 years old at the time of the Administrative Law Judge's ("ALJ's") decision and has a ninth-grade education. (Tr. at 136, 148.) His past work

1

experience includes employment as a roofer. (Tr. at 148.) Whitmore claims he became disabled on May 25, 2016, as a result of a fall from a roof while working, which shattered his heels and required three surgeries. (Tr. at 39.)

The Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled and thus eligible for DIB or SSI. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The evaluator will follow the steps in order until making a finding of either disabled or not disabled; if no finding is made, the analysis will proceed to the next step. See 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The first step requires the evaluator to determine whether the plaintiff is engaged in substantial gainful activity ("SGA"). *Id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the plaintiff is not engaged in SGA, the evaluator moves on to the next step.

The second step requires the evaluator to consider the combined severity of the plaintiff's medically determinable physical and mental impairments. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An individual impairment or combination of impairments that is not classified as "severe" and does not satisfy the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 will result in a finding of not disabled. *Id.* The decision depends on the medical evidence contained in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971) (concluding that

"substantial medical evidence in the record" adequately supported the finding that plaintiff was not disabled).

Similarly, the third step requires the evaluator to consider whether the plaintiff's impairment or combination of impairments meets or is medically equal to the criteria of impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the criteria of a listed impairment and the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 are satisfied, the evaluator will make a finding of disabled. *Id.*

If the plaintiff's impairment or combination of impairments does not meet or medically equal a listed impairment, the evaluator must determine the plaintiff's residual functional capacity ("RFC") before proceeding to the fourth step. *See id.* §§ 404.1520(e), 416.920(e). The fourth step requires the evaluator to determine whether the plaintiff has the RFC to perform the requirements of his past relevant work. *See id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the plaintiff's impairment or combination of impairments does not prevent him from performing his past relevant work, the evaluator will make a finding of not disabled. *See id.*

The fifth and final step requires the evaluator to consider the plaintiff's RFC, age, education, and work experience in order to determine whether the plaintiff can make an adjustment to other work. *Id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the

plaintiff can perform other work, the evaluator will find him not disabled. *Id.*; *see also* 20 C.F.R. §§ 404.1520(g), 416.920(g). If the plaintiff cannot perform other work, the evaluator will find him disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g).

Applying the sequential evaluation process, the ALJ found that Whitmore met the insured status requirements of the Social Security Act through March 31, 2021. (Tr. at 19.) He further determined that Whitmore has not engaged in SGA since May 25, 2016, the alleged onset date of his disability. (*Id.*) According to the ALJ, Whitmore's "degenerative disc disease, history of bilateral heel fractures, and osteoarthritis of the knees" are considered "severe" based on the requirements set forth in the regulations. (*Id.*) However, the ALJ found that these impairments neither meet nor medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 22.) Next, the ALJ determined that Whitmore has the following RFC: "[T]o perform light work as defined in 20 C.F.R. § 404.1567(b) with no climbing; no bilateral foot controls; no driving; occasional stooping and crouching; and a temperature controlled environment." (*Id.*)

According to the ALJ, Whitmore "is unable to perform any past relevant work." (Tr. at 24.) The ALJ also determined that Whitmore was a "younger individual aged 18-49" on the alleged disability onset date. (Tr. at 25.) The ALJ then

determined that the "transferability of job skills is not material to the determination of disability." (*Id.*) Because Plaintiff cannot perform the full range of light work, the ALJ enlisted a vocational expert ("VE") and used Medical-Vocation Rules as a guideline. (*Id.*) The VE found that there are a significant number of jobs in the national economy that Whitmore is capable of performing such as a production assembler, small product assembler, and bench assembler. (*Id.*) The ALJ concluded his findings by stating that Plaintiff "has not been under a disability, as defined in the Social Security Act, at any time from May 25, 2016, the alleged onset date, through the date of this decision." (Tr. at 26.)

## II.   Standard of Review

This Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the commissioner, and (2) whether the correct legal standards were applied. *See Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). This Court gives deference to the factual findings of the Commissioner, provided those findings are supported by substantial evidence, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

Nonetheless, this Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)). "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the proof preponderates against the Commissioner's decision, it must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

However, no decision is automatic, for "despite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984) (citing *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1989)).

### III. Discussion

Whitmore alleges that the ALJ's decision should be reversed and remanded for several reasons: (A) the ALJ improperly applied the pain standard and failed to accept the plaintiff's testimony as to his subjective complaints; (B) the ALJ failed to account for plaintiff's "excellent" work history in determining his subjective complaints; (C) the ALJ is biased against claimants; and (D) the decision to deny was not based on substantial evidence because the testimony of the VE was based on an "incomplete and inaccurate" hypothetical question.

### A. ALJ Properly Applied the Eleventh Circuit Pain Standard

Plaintiff's subjective complaints alone are insufficient to establish a disability. *See* 20 C.F.R. §§ 404.1529(a), 416.926(a); *Edwards v. Sullivan*, 937 F.2d 580, 584 (11th Cir. 1991). Subjective testimony of pain and other symptoms may establish the presence of a disabling impairment if it is supported by medical evidence. *See Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995). The Eleventh Circuit applies a two-part pain standard when a plaintiff claims disability due to pain or other subjective symptoms. The plaintiff must show evidence of the underlying medical condition and either (1) objective medical evidence that confirms the severity of the alleged symptoms arising from the condition, or (2) that the objectively determined medical condition is of such a severity that it can reasonably be expected to give rise to the

alleged symptoms. *See* 20 C.F.R. §§ 404.1529(a), (b), 416.929(a), (b); Social Security Ruling ("SSR") 16-3p, 2016 WL 1119029; *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002).

If the first part of the pain standard is satisfied, the ALJ then evaluates the intensity and persistence of Plaintiff's alleged symptoms and their effect on his ability to work. *See* 20 C.F.R. §§ 404.1529(c), 416.929(c); *Wilson*, 284 F.3d at 1225–26. In evaluating the extent to which the Plaintiff's symptoms, such as pain, affect his capacity to perform basic work activities, the ALJ will consider (1) objective medical evidence, (2) the nature of Plaintiff's symptoms, (3) the Plaintiff's daily activities, (4) precipitating and aggravating factors, (5) the effectiveness of medication, (6) treatment sought for relief of symptoms, (7) any measures the Plaintiff takes to relieve symptoms, and (8) any conflicts between a Plaintiff's statements and the rest of evidence. *See* 20 C.F.R. §§ 404.1529(c)(3), (4), 416.929(c)(3), (4); SSR 16-3p. In order to discredit Plaintiff's statements, the ALJ must clearly "articulate explicit and adequate reasons." *See Dyer*, 395 F.3d at 1210.

An ALJ's subjective complaints determination is a question of fact subject only to limited review in the courts to ensure the finding is supported by substantial evidence. *See Hand v. Heckler*, 761 F.2d 1545, 1548–49 (11th Cir. 1985), *vacated for rehearing en banc*, 774 F.2d 428 (11th Cir. 1985), *reinstated sub nom.*, *Hand v. Bowen*,

8

793 F.2d 275 (11th Cir. 1986). Courts in the Eleventh Circuit will not disturb a clearly articulated finding supported by substantial evidence. *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014). "The question is not . . . whether [the] ALJ could have reasonably credited [Plaintiff's] testimony, but whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011).

Whitmore stated that he stopped working in May 2016 after falling from a roof and shattering his heels, which required three surgeries that damaged his back even more. (Tr. at 39.) Whitmore further stated that he cannot stand for more than 45 minutes or walk for more than 30 minutes and that he cannot lift anything heavier than a gallon. (Tr. at 42-43.) The ALJ found that the plaintiff's "medically determinable impairments could be expected to cause some pain and limitations." (Tr. at 23.) However, the ALJ also found that the plaintiff's statements concerning the intensity, persistence, and limiting effects of these impairments were not consistent with the medical evidence. (*Id.*) The ALJ covered a variety of evidence to support his finding, including medical evidence, treatment history, and daily activities. (Tr. at 23-24.) Substantial evidence supports the ALJ's conclusion in this case.

The ALJ began by noting that the medical evidence and treatment history do not support the disabling limitations alleged by Whitmore. (Tr. at 23-24.) From June 2012 to 2016, Whitmore had a magnetic resonance imaging (MRI) done on multiple occasions that displayed minimal anterior wedging at T12 with lumbar degenerative disc disease and grade 1 to 1.5 spondylolisthesis at L5. (Tr. at 227, 324.) On April 20, 2016, a month before his heel injury, Dr. Larry Johnston, Plaintiff's treating physician, prescribed Norco, a pain medication. (Tr. at 392.) Dr. Johnston reported Whitmore's pain level was a seven on a ten-point scale at its worst, and a five on average with medication. (*Id.*) Dr. Johnston also noted that Whitmore had some lumbar tenderness but that he maintained full range of motion with pain at the extremes of motion. (Tr. at 393.)

Furthermore, Whitmore's pain seemed to be under control even after his heel injury. After his accident on May 25, 2016, an evaluation indicated Whitmore suffered bilateral calcaneal fractures. (Tr. at 427.) Whitmore was hospitalized at Huntsville Hospital where Dr. Sudhakar Madanagopal, an orthopedic surgeon, performed a right calcaneal open reduction internal fixation on May 27, 2016, and a left calcaneal open reduction internal fixation on May 29, 2016. (*Id.*)

On June 16, 2016, a month after his injury, Dr. Johnston reported that Whitmore described his pain level as a nine on a ten-point scale at its worst, and a

five out of ten on average with medication. (Tr. at 603.) At that same visit, Whitmore told Dr. Johnston that he has adequate pain control. (*Id.*) Dr. Johnston also prescribed Whitmore more Norco on this visit for continued pain management. (*Id.*) About a month later on July 28, 2016, Dr. Johnston reported Whitmore had a daily average pain level of four, continued adequate pain control, continued lumbar tenderness, full range of motion with pain at the extremes of motions, and that he was able to stand and take a few steps. (Tr. at 600.) On August 24, 2016, three months after his injury, Dr. Johnston reported Whitmore was doing well when on his prescribed pain medication, reporting an average daily pain level of three. (Tr. at 597.) Dr. Johnston also noted mild tenderness above Whitmore's heels and that Whitmore was able to bear weight for brief periods. (Tr. at 598.) A few months later, in January, February, and March 2017, Dr. Johnston noted that Whitmore's pain levels were under control, averaging around a four to a five. (Tr. at 654, 657, 676.)

Whitmore then continued to have his pain under control at later visits. In June, July, August, September, October, and November 2017, Dr. Johnston reported Whitmore's pain levels were averaging from a four to a six most days on his medication, which he described as adequate pain control. (Tr. at 722, 726, 729, 740, 743, 746.) All of Whitmore's examinations remained stable during these visits as well, and he had full range of motion with pain only at the extremes of motion. (Tr.

at 723, 727, 730, 741, 744, 747.) Dr. Johnston also noted during visits in February and March 2018 that Whitmore described his pain levels as averaging a six daily while on his medication, which Dr. Johnston described as adequate pain control. (Tr. at 757, 761.)

The two fractures in Whitmore's heels also seemed to be healing well throughout his recovery. (Tr. at 642.) On September 16, 2016, Dr. Madanagopal noted that Whitmore was able to wear normal shoes and bear some weight. (*Id.*) X-rays of Whitmore's heels also indicated both were healing well. (Tr. at 651-52.) Dr. Madanagopal also ordered a CT scan of Whitmore's pelvis after he complained of right hip pain, which indicated a healed pelvis fracture and a healed transverse fracture of the right acetabulum. (Tr. at 643, 650.) For his right hip pain, Dr. Madanagopal told Whitmore to limit weight-bearing on his right side. (Tr. at 643-44.) In December 2016, Dr. Madanagopal reported Whitmore's complaints of increased pain in his right heel. (Tr. at 637.) Dr. Madanagopal ordered another x-ray that revealed Whitmore's right heel was not healing as well as the left heel and indicated that another surgery may be necessary. (Tr. at 638.)

On March 27, 2017, Dr. Madanagopal conducted a right subtalar fusion with removal of the previously placed implant. (Tr. at 692.) On May 30, 2017, Dr. Madanagopal ordered x-rays and noted that both heels seemed to be healing very

well. (Tr. at 714.) During this visit, Dr. Madanagopal also reported that Whitmore would be able to return to full weight-bearing within the next six weeks. (*Id.*)

The ALJ also considered Whitmore's reports to his physicians that he was able to engage in his daily activities without issue. (Tr. at 24.) The ALJ did not rely solely on Whitmore's daily activities when determining the validity of Whitmore's subjective complaints of pain. *See* 20 C.F.R. § 404.1529(c)(3) (specifically listing daily activities as a factor to consider in evaluating a claimant's subjective complaints); *Majkut v. Comm'r of Soc. Sec.*, 394 F. App'x 660, 663 (11th Cir. 2010) ("Although a claimant's admission that she participates in daily activities for short durations does not necessarily disqualify the claimant from disability . . . that does not mean it is improper for the ALJ to consider a claimant's daily activities at all."); *Macia v. Bowen*, 829 F.2d 1009, 1012 (11th Cir. 1987) (noting an ALJ may consider a claimant's activities of daily living in assessing a claim).

The ALJ analyzed Whitmore's daily activities as one factor along with the objective medical evidence and his treatment history to relieve his symptoms. (Tr. at 19-20.) In his follow-up appointments, Dr. Johnston consistently indicated that Whitmore was functioning and capable of performing his activities of daily living without difficulty. (Tr. at 392, 395, 398, 401, 597, 600, 603, 624, 629, 633, 654, 657, 676, 680, 722, 726, 729, 732, 736, 740, 743, 746, 757, 761.) Dr. Johnston also reported

that Whitmore was successfully managing his pain with medication and was able to do household chores and take care of his dog. (Tr. at 722, 740, 757.) On March 6, 2018, Dr. Johnston also indicated that Whitmore was able to work part-time. (Tr. at 763.) Notably, the plaintiff never complained of knee pain throughout this period of time. (Tr. at 24.)

Here, the objective medical evidence, treatment history, and Whitmore's daily activities demonstrate that the ALJ had substantial evidence to support his discreditation of Plaintiff's subjective complaints. (Tr. at 23.)

### B. ALJ Assigned Proper Weight to Plaintiff's Work History

The plaintiff argues that the ALJ did not give proper weight to his "excellent" and "stellar" work history. As an initial matter, the Eleventh Circuit has explained, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in [his] decision." *Lewis v. Comm'r of Soc. Sec.*, 605 F. App'x 967, 968 (11th Cir. 2015) (quoting *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005)). Whitmore asserts that a "'claimant with a good work record is entitled to substantial credibility when claiming an inability to work because of a disability.'" *Hill v. Colvin*, 807 F.3d 862, 868 (7th Cir. 2015) (citing *Rivera v. Schweiker*, 717 F.2d 719, 725 (2nd Cir. 1983)). However, Plaintiff cites nothing in the Social Security Act, implementing regulations, or the agency's subregulatory policies dictating that an

14

ALJ must consider or discuss work history as a favorable factor when evaluation subjective complains. *Cf.* 20 C.F.R. §§ 404.1529(c), 416.929(c); SSR 16-3p, 2017 WL 5180304, at *5-10. This Court has previously recognized that the Commissioner's rulings and regulations do not require the ALJ to explicitly discuss a claimant's work history when evaluating complaints. See *Garner v. Berryhill*, No. 5:16-cv-0222-LSC, 2017 WL 4340451, at *7 (N.D. Ala. Sept. 29, 2017).

Binding Eleventh Circuit precedent shows that an ALJ's disability determination will be upheld, no matter the plaintiff's good work history, if the ALJ's subjective complaint determination is supported by substantial evidence. *See*, *e.g.*, *Edwards v. Sullivan*, 937 F.2d 580, 584 (11th Cir. 1991) (holding that the ALJ was not required to accept claimant's testimony about her pain merely because she had a good work history because the ALJ's findings on her subjective complaints were supported by substantial evidence). Here, the ALJ's subjective complaint determination is supported by substantial evidence. The ALJ examined the entirety of Whitmore's medical record, including his ability to manage his pain with medication and the doctors' notes on Whitmore's recovery. (Tr. at 597, 603, 624, 654, 717, 722.) The ALJ also considered Whitmore's ability to manage his finances, complete his necessary household activities, and care for his dog. (Tr. at 23, 39, 740,

15

757.) Importantly, Whitmore does not argue that there is not substantial evidence to support the ALJ's decision.

### C. ALJ Bias

The Eleventh Circuit has held that a claimant is entitled to both a full and fair hearing and that an ALJ shall not conduct a hearing if he or she is prejudiced with respect to a party to a case or has any interest in the outcome of the pending matter. *Miles,* 84 F.3d at 1401 (citing 20 C.F.R. § 404.940). The ALJ plays a crucial role in the disability review process and "not only is he duty-bound to develop a full and fair record, he must carefully weigh the evidence, giving individualized consideration to each claim that comes before him." *Id.* The ALJ's impartiality is integral to the system. *Id.* ALJs are presumed to be unbiased and exercise their decision-making authority with honesty and integrity. *Schweiker v. McClure,* 456 U.S. 188, 195–196 (1982). The burden of overcoming this presumption rests on the party asserting bias. *Id*. at 195. This presumption may be overcome by a "showing of a conflict of interest or some other specific reason for disqualification." *Id.* The presumption can be overcome only with convincing evidence that "a risk of actual bias or prejudgment" is present. *Withrow v. Larkin*, 421 U.S. 35, 47 (1975). To be disqualifying, alleged bias "must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case."

*United States v. Grinnell Corp.*, 384 U.S. 563, 583 (1966). "[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Liteky v. United States*, 510 U.S. 540, 555 (1994) (citing Grinnell Corp., 384 U.S. at 583).

Whitmore alleges that the ALJ has a general bias against claimants and has a history of substituting his opinion for the opinions of medical experts. However, Whitmore concedes that he has not shown an actual or particularized bias; he does not even refer to a specific physician's opinion that the ALJ did not properly evaluate. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) ("We have long held that an appellant abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority."). Whitmore also lists the reversals of this ALJ's decisions by federal district courts and references the ALJ's high denial of benefits rate. However, a low approval rating for disability claims or previously remanded decisions does not illustrate bias on the part of the ALJ. *See Liteky*, 510 U.S. at 555 ("[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion."); *Contreras-Zambrano v. Soc. Sec. Admin., Comm'r*, 724 F. App'x. 700, 703 (11th Cir. 2018). None of this establishes bias in Plaintiff's particular case, so his claim fails.

    **D.**     **Hypothetical Posed to VE**

17

Whitmore argues that the ALJ's decision was not based on substantial evidence because the testimony of the VE was based on an "inaccurate and incomplete" hypothetical question. He says the ALJ did not include his "pain, depression, back injury, etc" in the hypothetical question.

For VE testimony to "constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999); *Winschel v. Commissioner*, 631 F.3d 1176 (11th Cir. 2011). However, an ALJ is not required or supposed to question a VE, who is not an authority on medical matters and not qualified to determine what limitations might stem from a particular impairment, about diagnoses, impairments, or other medical evidence. Hearings, Appeals, and Litigation Law Manual (HALLEX), I-2-6-74(C), 1993 WL 751902 (S.S.A.) (explaining an ALJ will not permit a VE to respond to questions on medical matters or to draw conclusions not within the VE's authority, such as an opinion on the claimant's RFC); *see also* 20 C.F.R. § 404.1546(c) (explaining that at the hearing level the ALJ is responsible for assessing a claimant's RFC). Instead, the ALJ only needs to present a hypothetical including a claimant's functional limitations that are caused by his impairments and supported by the record, like the ALJ did in this case. (Tr. at 48-49). *See Ingram*, 496 F.3d at 1270. The limitations presented in the ALJ's RFC finding were identical to those in

the hypothetical question present to the VE. (Tr. at 25, 48-50.) Because the hypothetical question presented to the VE reflected all of the limitations that were supported by the medical evidence and testimony, the ALJ was proper in relying on the VE's testimony about job availability for the Plaintiff with his specific RFC. *See Ingram*, 496 F.3d at 1270.

Whitmore also suggests that the hypothetical was incomplete because it did not include his difficulties with concentration, persistence, and pace. However, the ALJ found "no limitation" in the Paragraph B area of concentration, persistence, and pace as it related to the evaluation of the severity of mental impairments at steps two and three. (Tr. at 21.) Whitmore also indicated that his pain can "sometimes" affect his ability to focus, but the ALJ concluded that the medical evidence did not contain any objective indication of limitations in this area. (Tr. at 21, 46.) Thus, the ALJ was not required to include any unrelated limitations in the hypothetical presented to the VE. There is no evidence in the record that indicates the hypothetical presented to the VE was inaccurate or incomplete.

**IV. Conclusion**

Upon review of the administrative record, and considering all of Whitmore's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. A separate order will be entered.

**DONE** and **ORDERED** on September 21, 2020.

_____
L. Scott Coogler
United States District Judge

160704